UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE LUIS ZOLANO-ROJAS,

Defendant.

Case No. 2:19-cr-00325-JAD-EJY

**REPORT AND RECOMMENDATION**

**RE: Motion to Dismiss (ECF No. 16)**

Before the Court is Defendant Jose Luis Zolano-Rojas' Motion to Dismiss (ECF No 16). The Court has reviewed Defendant's Motion, the Response filed by Plaintiff (the "United States" or the "Government") (ECF No 19), the Government's Motion for Leave to Supplement Response in Opposition to Motion to Dismiss (ECF No. 20), and the Reply to the Government's Response to the Motion to Dismiss (ECF No. 24).

**I.     BACKGROUND**

The facts underlying this dispute are largely undisputed.  Defendant is a citizen of Mexico who entered the United States in or around April 2006.[1]  Defendant was arrested on April 5, 2006 by Las Vegas Metropolitan Police Department ("Metro" or "LVMPD") and, on May 3, 2006, he pled guilty to Possession of Controlled Substance with Intent to Sell (Category D Felony – NRS 453.337).[2]  In February 2007, while on probation arising from his first offense, Defendant was arrested a second time for Trafficking in Controlled Substance in violation of NRS 453.3385.[3]  In April 2007, Defendant pled guilty to this offense, his probation was revoked, and he was sentenced to twelve to thirty-two months in the Nevada Department of Corrections ("NDOC").[4]

---

[1]      ECF No. 16-1 at 1.

[2]      ECF No. 19-2 at 1 and ECF No. 19-2.

[3]      ECF No. 19-4 at 1.

[4]      ECF Nos. 19-5 and 19-6.

On June 3, 2009, the Department of Homeland Security served Defendant with a Notice to Appear before an Immigration Judge ("IJ") based on the charge that Defendant was within the United States without having been admitted or paroled.[5]  On that same date, Defendant signed a Stipulated Request for Removal Order and Waiver of Hearing (the "Stipulated Request").[6]  The content of the Stipulated Request appears in English and Spanish, and the Immigration Agent certified that he read the Stipulated Request to Defendant in Spanish.[7]  The Stipulated Request states, in pertinent part, and Defendant initialed, that:

- I waive my right to be represented by an attorney.  I will represent myself in these proceedings;
- I do not believe that I will be persecuted, harmed, or tortured if I return to Mexico;
- I do not wish to apply for asylum, withholding of removal, or protection under the Convention Against Torture;
- I do not wish to apply for any relief from removal for which I may be eligible under … the law.  This may include voluntary departure …;
- I do not wish to appeal the written order of the immigration judge; and,
- This written statement has been read to me in a language that I understand.  I also had an opportunity to read this written statement.  I fully understand its consequences.  I submit this request for a removal order voluntarily, knowingly, and intelligently.[8]

On June 4, 2009, IJ Irene Weiss signed Defendant's final order of removal.[9]

Sometime after June 2009 and before February 2010, Defendant returned to the United States.[10]  Defendant was arrested a third time, in August 2014, by the LVMPD for Trafficking in a Controlled Substance in violation of NRS 453.3385.2 to which Defendant pled guilty on December 16, 2014.[11]  Defendant was sentenced and in custody when he was served with a Notice of Intent to Issue a Final Administrative Removal Order in November 2016.[12]  The November 2016 Notice states that Defendant is removable because he has been convicted of an aggravated felony as defined

---

[5]    ECF No. 16-1 at 1.

[6]    ECF No. 16-2.

[7]    *Id.* at 2-4.

[8]    *Id.*

[9]    ECF No. 16-3.

[10]   ECF No. 16 at 3; ECF No. 19-10 (showing a reentry date of approximately February 2010).

[11]   ECF Nos. 19-11 and 19-12.

[12]   ECF No. 19-10 at 1 (showing Defendant's address at the Southern Desert Correctional Center).

in section 101(a)(43)(B) of the Immigration and Nationality Act.[13]    This, in turn, was based on Defendant's April 2007 conviction of Possession of Controlled Substance with Intent to Sell in violation of NRS 453.337.[14]    Defendant was then ordered removed to Mexico in September 2018, after completing his sentence.[15]    Thereafter, Defendant reentered the United States and the Department of Homeland Security issued a Decision to Reinstate Prior [Removal] Order on October 9, 2018.[16]    Defendant was again removed to Mexico (although the date of this removal is unclear). It is uncontested that sometime thereafter Defendant reentered the U.S.,[17] was arrested by the LVMP on June 26, 2019 for drug trafficking, released into DHS custody, and indicted on December 28, 2019 under 18 U.S.C. § 1326(a) and (b).[18]

Defendant collaterally attacks the validity of the original deportation order pursuant to 8 U.S.C. § 1326(d), in an effort to dismiss his indictment for the violation of Section 1326(a) of the same title.  Defendant argues that he is exempt from the first two requirements he would ordinarily have to meet to sustain a collateral attack, which include (1) a demonstration that the defendant exhausted "any administrative remedies that may have been available to seek relief against the order" and (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review."[19]    Defendant argues these two elements are inapplicable because his "appellate waiver was not 'sufficiently considered and intelligent under the Due Process Clause of the Fifth Amendment."[20]    Importantly, for the purposes of the instant motion to dismiss,

---

[13]    *Id.*

[14]    *Id.* at 4.

[15]    ECF No. 19-13.

[16]    ECF No. 19-14.

[17]    ECF No. 16 at 4.

[18]    ECF No. 1.

[19]    ECF No. 16 at 4; 8 U.S.C. § 1326(d).

[20]    ECF No. 16 at 4 *citing United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).

the Government states it "does not contest that" Defendant has satisfied the first two "requirements of 8 U.S.C. § 1326(d)(1)-(2) with respect to his June 2009 stipulated removal."[21]

The third element a defendant must demonstrate in order to successfully collaterally attack the validity of an underlying deportation order is a showing that "the entry of the order was fundamentally unfair."[22]  The United States contests whether Defendant "was clearly eligible for voluntary departure" because, according to the Government, (1) Defendant was convicted of an aggravated felony, and (2) even if Defendant was not convicted of an aggravated felony, Defendant cannot demonstrate prejudice.[23]

Because the Government does not contest that Defendant has met the first two elements he must prove to demonstrate the underlying removal order was invalid, the Court does not discuss these elements in this Order.  Further, because (1) the issue of whether NRS 453.337 is an aggravated felony is a question that has been certified by the Ninth Circuit to the Nevada Supreme Court,[24] and (2) clear law hold that even if Defendant's conviction under NRS 453.557 is not an aggravated felony, the Court must consider whether this error caused Defendant to suffer prejudice,[25] the Court considers the question of prejudice first.  If no prejudice is found, the Court need not reach the question of whether NRS 453.337 is an aggravated felony.

## II.    DISCUSSION

A.    <u>Accepting, for Purposes of this Analysis, that NRS 453 Is Not An Aggravated Felony, Was The Entry Of The 2009 Removal Order Fundamentally Unfair</u>?

As explained in *Valdez-Novoa*, "[i]n order to demonstrate that the entry of the [removal] order was fundamentally unfair, … the defendant must show that he suffered prejudice as a result of the defects in the removal proceedings."[26]  To prove prejudice, the defendant seeking a discretionary

---

[21]    ECF No. 19 at n.4.

[22]    8 U.S.C. § 1326(d)(3).

[23]    ECF No. 16 at 9; ECF No. 19 at 6-7 and n.4.

[24]    *United States v. Figueroa-Beltran*, 892 F.3d 997, 1004 (9th Cir. 2018).

[25]    *U.S. v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015).

[26]    *Id.* (citations and internal quote marks omitted, brackets in original).

form of relief must make a "plausible showing" that had the IJ been presented with all of the facts, the IJ would have exercise discretion in the alien's favor.[27]  Here, Defendant claims that he suffered prejudice as the result of (1) the IJ's failure "to inform him of the availability of relief from removal" because Defendant had a plausible claim for voluntary departure under 8 U.S.C.§ 1229c(a), and (2) Plaintiff could have sought "withholding of removal or relief under Article 3 of the Convention Against Torture (CAT).  8 U.S.C. § 1231(b)(2)(A)."[28]

        B.     Voluntary Departure.[29]

Immigration Judges have broad "authority to grant pre-conclusion voluntary departure" relief.[30]  The Ninth Circuit follows "a two-step process to determine whether the defendant was prejudiced by the IJ's decision not to inform him of his apparent eligibility for voluntary departure relief.[31]  First, the Court must "consider the positive and negative factors an IJ would consider relevant to an exercise of discretion."[32]  Second, the Court must determine "whether, in light of these factors and the circumstances of the alien's case, the alien carried the burden of proving 'it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor.'"[33]  Weighing these factors, applicants for "voluntary departure fall on a continuum between those who have no criminal record … and significant positive ties to the United States, and those

---

[27]    *United States v. Rojas-Pedroza,* 716 F.3d 1253, 1263–64 (9th Cir. 2013).

[28]    ECF No. 16 at 10 and 14.

[29]    A review of the Government's Response to the Motion to Dismiss shows no argument contesting Defendant's position that the IJ failed to ensure that Defendant voluntarily, knowingly, and intelligently waived his rights at the time he stipulated to removal.  *Compare* ECF No. 16 at 7-10 and ECF No. 19.  Thus, this issue is not evaluated by the Court. Rather, as stated above, the issue is whether this failure – violation of due process – prejudiced Defendant.

[30]    *United States v. Alcazar-Bustos*, 382 Fed. Appx. 568, 570 (9th Cir. 2010).

[31]    *Id*. at 916.

[32]    *U.S. v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015) *citing United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).

[33]    *Id*.

who have serious records and no countervailing equities."[34]  For those who fall in between these two extremes, "the question of plausibility requires a closer examination of the facts and a comparison with similar cases."[35]

The positive factors a court should consider include the length of residence in the U.S., close family ties in the U.S. "or humanitarian needs."[36]  Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident."[37]

Defendant's equities demonstrate that at the time he stipulated to removal in June 2009, he had just completed a term of incarceration that arose from two drug trafficking convictions with the second offense occurring while Defendant was on probation for the first conviction.  The second conviction resulted in revocation of his probation and a sentence in NDOC of twelve to thirty-two months.  The two drug convictions occurred within a ten month period.  In fact, having received probation after his first conviction, Defendant did not seem to hesitate to continue in drug trafficking conduct.  Thus, in June 2009, having entered the U.S. in April 2006, the only time Defendant spent in the U.S. that he was not incarcerated was after his release following the April 2006 arrest and before February 26, 2007 when he was arrested again.[38]

It is worth noting that before Defendant stipulated to removal, he received a document written in Spanish, which was also read to him in Spanish, explaining rights he was waiving.[39]  Defendant also initialed paragraphs stating: "I do not believe that I will be persecuted, harmed, or tortured if I return to Mexico"; "I do not wish to apply for asylum, withholding of removal, or

---

[34]    *Alcazar-Bustos*, 382 Fed.Appx. at 570.

[35]    *Id.*

[36]    *Id. citing Rojas-Pedroza*, 716 F.3d at 1265.

[37]    *Id.*

[38]    By the time Defendant's June 2009 Stipulated Removal was reinstated in October 2018 (ECF No. 16-6), his April 2006 probation had been revoked, and he was sentenced to twelve to thirty-two months in the Nevada Department of Corrections ("NDOC").  ECF No. 19-6.

[39]    ECF No. 16-2, at 2-4.

protection under the Convention Against Torture"; and, "I do not wish to apply for any relief from removal for which I may be eligible under … the law.  This may include voluntary departure … ."[40] With respect to family ties in the U.S., a January 2015 Presentence Investigation Report, prepared by the Nevada Department of Public Safety, Division of Parole and Probation, shows that Defendant was single and had no reported children.  ECF No. 19-11, at 3.[41]  Thus, while it is certainly conceivable that the IJ could have exercised discretion and granted Defendant pre-conclusion voluntary departure, the equities demonstrate that Defendant has not met his burden of demonstrating plausibility.[42]

A review of case law supports this conclusion.  In *Valdez-Novoa*, the defendant had been in the U.S. since he was a child (brought by his parents who had obtained permanent residence status at the time of defendant's removal).[43]  The defendant had eight siblings living in California "some or all of whom were either citizens or lawful permanent residents at the time" the defendant was "deemed removable."[44]  The defendant had also earned a diploma from an alternative high school, a welding certificate, and worked in various jobs prior to his removal.[45]  The Ninth Circuit nonetheless concluded that Valdez-Novoa did not show that it was "plausible" that an IJ would have granted his request for voluntary departure … ."[46]  Here, it is clear that Defendant in this action has demonstrably fewer positive equities than those the defendant demonstrated in *Valdez-Novoa*.

---

[40]    *Id.*

[41]    Defendant states that he "had a U.S. citizen daughter residing in California with her mother" at the time of the June 2009 Stipulated Removal (ECF No. 16 at 14); however, Defendant offers no evidence to support this fact and the bare argument by counsel in a brief is not evidence.  *Carrillo–Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir.2003) (arguments of counsel are not evidence).  Further, the Presentence Investigative Report, ECF 19-11 at 3, shows Defendant reported having no children.

[42]    *United States v. Muro-Inclan*, 249 F.3d 1180, 1186 (9th Cir. 2001) (the existence of factors establishing relief from deportation do not necessarily establish plausibility).

[43]    780 F.3d at 917-18.

[44]    *Id.* at 918.

[45]    *Id.*

[46]    *Id.* at 921.

Moreover, as is true here, defendant Valdez-Novoa cited to numerous Board of Immigration Appeal ("BIA") decisions in an effort to demonstrate that "departure is plausible in light of humanitarian needs or positive equities, notwithstanding the existence of numerous or even serious prior convictions and additional evidence of bad character."[47]  Like the defendant Valdez-Novoa, Defendant cites to *In re Gonzales-Figeroa*.[48]  However, that case is clearly distinguishable from the case at bar.  In *Gonzales-Figeroa*, the respondent entered the U.S. in May 1989, and his mother, a lawful permanent resident with whom he lived, filed a visa petition on behalf of her son.[49]  The defendant's sister and two nieces were citizens of the U.S.[50]  The decision further indicates that the defendant's convictions were due to alcoholism, which he addressed through Alcoholics Anonymous while in prison.[51]  The defendant also assisted his mother with rent and medical expenses.  *Id.*  The appellate board found, on this basis, that defendant was a "person of good moral character and worthy of discretionary relief."[52]

After reviewing the *Gonzales-Figeroa* decision, and numerous others on which the defendant in *Valdez Novoa* relied, the Ninth Circuit stated:

> We do not discount the fact that Valdez-Novoa had spent most of his life in the U.S. and that his parents and siblings lived in the country.  Although there is no indication that Valdez-Novoa was married or had children in 1999, we

---

[47]    ECF No. 16 at 12 and 13.

[48]    File A29 013 696, 2006 WL 729784 (Balt. Feb. 10, 2006).

[49]    *Id.* at *1.

[50]    *Id*.

[51]    *Id*.

[52]    *Id*. at 2.  Further, and by way of example, Defendant also relies on *In re Arguelles-Campos*, File A73 000 231, 1999 WL 360383, 22 I & N Dec. 811 (San Diego June 7, 1999), and *In re Pineda-Castellanos*, File AXX-XX2, 2005 WL 3833024 (San Diego Nov. 16, 2005).  Each of these cases is also distinguishable on the facts.  With respect to *In re Pineda-Castellanos*, the issue was an appeal of "the denial of a continuance to apply for adjustment of status" and not a decision pertaining to the denial of voluntary departure.  The decision in *In re Arguelles-Campos*, the IJ denied the respondent's application for voluntary dismissal, which was appealed.  *Id*. at *812.  The appeal was dismissed despite noting that the IJ applied the wrong law, and that the respondent "lives with his two United States citizen children, volunteers at his church, and appears to have no criminal convictions."  *Id*. at *818.  The BIA noted that the respondent was working in the U.S. "without authorization, driving … without a license …, and most important, … [had] entered this country five times without inspection after being permitted to voluntarily depart five times."  *Id*.  The BIA ultimately concluded that "respondent's equities are outweighed by his adverse factors, particularly his immigration history and the nature of his entries into this country" leading to dismissal of the appeal.  *Id*. at 819-20.

acknowledge that the presence of family members who are citizens or lawful permanent residents is an important positive equity. Yet, it is hardly dispositive.

\*\*\*

We conclude that Valdez-Novoa has not shown that it is plausible that an IJ would have granted his request for voluntary departure in light of his negative and positive equities when he was deemed removable on June 11, 1999, even if he had not been deemed statutorily ineligible for voluntary departure as a consequence of the IJ's determination that he had been convicted of an aggravated felony.[53]

Here, without summarizing every BIA decision cited by Defendant, the Court notes that Defendant cites no fact establishing more than mere conceivability that the IJ would have exercised discretion in his favor.[54] Said differently, the equities in this case demonstrate that Defendant has no family ties in the U.S., has not been a long term resident, has never worked in the U.S.,[55] did not seek or earn a degree while in prison or otherwise demonstrate positive equities that outweigh the negative equities of his apparent entry into the U.S. to traffic drugs or his drug trafficking convictions in close proximity, one while on probation for the other.[56] That is, while Defendant *may* have been eligible for voluntary departure relief, assuming NRS 453.337 was not an aggravated felony, this does not equate to plausible grounds for such relief.[57]

---

[53]     *Valdez-Novoa*, 780 F.3d at 921.

[54]     *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th 2011).

[55]     ECF No. 17 (sealed) at 4.

[56]     Defendant relies on *United States Vasallo-Martinez*, 360 Fed.Appx. 731 (9th Cir. 2009) in his Reply brief. ECF No. 24 at 2. However, in *Vasallo-Martinez*, the Ninth Circuit found error because the district court failed to consider that:

> Vasallo entered the United States as a young child, and lived in the United States for at least 21 years before his deportation by stipulated removal. Although he was abandoned by his mother at a young age, Vasallo graduated from high school and earned an Associate's Degree in Automotive Technology. He has worked as an auto technician for 17 years, and has owned his own automotive business. The only family Vasallo has resides in the United States. Vasallo and his wife, a U.S. citizen, have been married for 6 years. He has a U.S. citizen child who was 3 years old at the time of his removal. He has attended the same church for almost 20 years.

*Id.* at 733. Not only are no similar facts present here, the Court has considered Defendant's positive equities relevant to this determination.

[57]     *Ubaldo-Figueroa*, 364 F.3d at 1050 (citation omitted).

C.    <u>Withholding of Removal and Relief Under the Convention Against Torture</u>.

Defendant argues that he had a plausible claim for withholding of removal because he was not convicted of a "particularly serious crime" and because, as a young boy, Defendant was allegedly seriously abused by his stepfather who is alleged to be a member of a drug cartel.[58]  Defendant further argues that the abuse was pervasive resulting in an attempted suicide at age 11, and that he was subsequently "forced" by the "cartels" to sell drugs in the United States.[59]  These facts, Defendant argues, qualifies Defendant for withholding of removal under the Convention Against Torture (CAT).  Defendant relies on *Sanchez-Miranda v. Barr*,[60] to support his contention that "[p]ast persecution, such as the kind … [Defendant] suffered at the hands of a drug cartel, would have entitled him to a presumption of future persecution."[61]  However, Defendant's reliance on this case is misplaced.

In *Sanchez-Miranda*, the court does state that if a defendant is able to "demonstrate past persecution, he would be entitled to a presumption of a sufficient likelihood of future persecution in support of his withholding of removal claim."[62]  However, the defendant, Sanchez-Miranda, did not make such a showing.[63]  Specifically, the defendant claimed his mother was physically and psychologically abused by his father while she was pregnant with defendant, but failed to demonstrate any "deleterious and long-lasting effects on his health from the abuse or that the beatings created a material ongoing threat to his and his mother's safety."[64]  The court also explained that the defendant did not witness the abuse and did not learn of the abuse until he was 18 years old.[65]  For these reasons, the Court found that the defendant did not demonstrate past persecution

---

[58]    ECF No. 16 at 14 citing Ex. I.

[59]    ECF No. 16 at 14.

[60]    782 Fed.Appx. 544, 548 (9th Cir. 2019).

[61]    ECF No. 16 at 14.

[62]    782 Fed.Appx. at 548.

[63]    *Id*.

[64]    *Id*. (Citation omitted.)

[65]    *Id*.

and that his "entitlement to withholding of removal" therefore hinged on showing that "it was more likely than not that" the defendant "would be subject to persecution on account of a protected status."[66]

Like the defendant in *Sanchez-Miranda*, Defendant Zolano-Rojas has not demonstrated any deleterious or long lasting effects of his alleged abuse as a child or that he is in danger of an ongoing threat to his safety.[67]  Defendant does not even mention deleterious or long lasting effects in his Motion.[68]  Defendant further offers nothing to support that he was being "forced" to sell drugs in the United States by any drug cartel.  *Id.*

A review of the decisions in *Wakkary v. Holder*[69] and *Budiarja v. Holder*[70] further illuminates why Defendant has not met his burden.  The court in *Wakkary* explains (after discussing the standard for establishing eligibility for asylum) that the same "subjective criteria" applies to those seeking withholding of removal, "but with a higher standard of objective reasonableness" such that "future persecution must be 'more likely than not.'"[71]  As applied to withholding of removal, "'persecution' is 'the infliction of suffering of harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive.'"[72]  "Persecution is … 'an extreme concept that does not include every sort of treatment our society regards as offensive."[73]  Further, "[t]o be eligible for CAT relief, aliens must show that it is more likely than not that they will be tortured (rather than persecuted on a protected ground) if return to their home countries."[74]

---

[66]    *Id. at* 548-49 *citing Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001).

[67]    In his Reply brief, Defendant states that Exhibit I to his Motion to Dismiss shows he "claimed a fear of being hurt or killed by Mexican drug cartels.  ECF No. 24 at 4.  A review of Exhibit I does support this statement.

[68]    ECF No. 16 at 14-15 and Ex. I thereto.

[69]    558 F.3d 1049 (9th Cir. 2009).

[70]    491 Fed.Appx. 797 (9th Cir. 2012).

[71]    558 F.3d at 1053 (citation omitted).

[72]    *Id*. *citing Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003).

[73]    *Id.* (citations omitted).

[74]    *Id*. (Citations and quote marks omitted.)

Here, Defendant has not demonstrated that it is more likely than not that he will be persecuted in the future if he is returned to Mexico. Thus, assuming Defendant is arguing persecution as a separate basis for relief, he fails to establish that he was, allegedly, substantially mistreated because of his race, religion, political opinion or different in a way that those supposedly engaged in the abuse saw him as different.

Defendant's Motion, based on a plausible claim for withholding of removal "under Article 3 of the Convention Against Torture," also fails.[75] However, Defendant does not allege, let alone state, that he is likely to be tortured if he returns home to Mexico. In fact, Defendant relies entirely on the allegations of abuse suffered as a child and the drug cartels forced him to sell drugs.[76] These allegations fail to establish any likelihood of torture upon return to Mexico.[77]

Based on the facts alleged and the legal standards Defendant must meet to establish a claim of entitlement to withholding of removal or CAT, the Court finds it is not plausible that an IJ would grant Defendant relief under either of these standards.

## III.    CONCLUSION AND REPORT AND RECOMMENDATION

A full review of Defendant's Motion to Dismiss, and all evidence and arguments offered in support thereof, do not support a finding that Defendant suffered prejudice as a result of treating a violation of NRS 453.337 as an aggravated felony. Accordingly,

IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss, ECF No. 16, be DENIED.

---

[75] ECF No. 16 at 14.

[76] *Id*.

[77] Defendant cites to *Madrigal v. Holder*, 716 F.3d 499, 508 (9th Cir. 2013) to suggest that because the government of Mexico "remains a problem ... at state and local levels ..., with police officers and prison guards frequently working directly on behalf of drug cartels" Defendant has demonstrated plausibility of CAT relief. ECF No. 24 at 3-4. However, unlike the defendant in *Madrigal*, Defendant here has offered no evidence, let alone substantial evidence that he is in any danger of torture. *Compare id*. at 504-506 *and* ECF No. 16. The present case and *Madrigal* have nothing in common.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Leave to Supplement Response (ECF No 19) in Opposition to Motion to Dismiss (ECF No. 16), docketed at ECF No. 20, be GRANTED.

DATED:  March 12, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).