# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:19-cr-00325-JAD-EJY |
| Plaintiff | |
| v. | **Order Adopting Magistrate Judge's Report and Recommendation and Denying Defendant's Motion to Dismiss** |
| Jose Luis Zolano-Rojas, | [ECF Nos. 16, 27] |
| Defendant | |

After being convicted of two drug felonies and removed from the United States, Jose Luis Zolano-Rojas moves to dismiss his indictment for unlawful reentry, claiming that the underlying removal order was fundamentally unfair because he was entitled to voluntary departure, withholding of removal, and relief under the Convention Against Torture.[1] Magistrate Judge Elayna J. Youchah recommends that I deny the motion because Zolano-Rojas wasn't prejudiced from treating his underlying convictions as aggravated felonies because his claims for deportation relief were implausible.[2] Because Zolano-Rojas has not shown that he had plausible claims for deportation relief based on his record at the time his removal order issued, I adopt Judge Youchah's recommendation in full and deny Zolano-Rojas's motion to dismiss.

## Background

Zolano-Rojas arrived in the United States from Mexico in April 2006.[3] He was arrested and charged on April 5, 2006, for possession of a controlled substance with intent to sell, a felony under Nevada Revised Statute (NRS) 453.337.[4] The June 2006 presentence report shows

---

[1] ECF No. 16 (motion to dismiss).

[2] ECF No. 27 (report and recommendation).

[3] ECF No. 16-1 (notice to appear).

[4] ECF No. 19-2 at 2 (presentence report).

that he failed to show for the presentence interview, so the Division of Parole and Probation was unable to obtain any social history.[5]  Because this was Zolano-Rojas's first offense, the Division recommended, and the state court sentenced him to, 12–32 months followed by 2 years of probation.[6]  Eleven months later, while on probation, he was arrested again for drug trafficking under NRS 453.3385.[7]  He pled guilty and the state court revoked his probation, amended his judgment of conviction, and imposed the original 12–32-month sentence.[8]

In June 2009, an immigration officer gave Zolano-Rojas a notice to appear that was based on the charge that he is an alien who has not been admitted or paroled to the United States.[9]  Zolano-Rojas signed the stipulated request for removal order and waiver of hearing in which he admitted that he is removable and waived his rights to an attorney, hearing before an immigration judge, an appeal of the removal proceedings, and asylum, withholding of removal, protection under the Convention Against Torture, or any other relief under the Immigration and Nationality Act.[10]  Zolano-Rojas was removed sometime in June 2009.[11]

In August 2014, he was found in the United States again, was arrested again for trafficking a controlled substance in violation of NRS 453.3385, and pled guilty to that charge.[12]  In January 2015, the Division took his social history for its presentence investigation report.[13]

---

[5] *Id*. at 3.

[6] *Id*. at 5; *see also* ECF No. 19-3 (first plea agreement).

[7] ECF No. 19-4; *see also* ECF No. 19-5 (second plea agreement).

[8] ECF No. 19-6 (amended judgment of conviction).

[9] ECF No. 16-1.

[10] ECF No. 1-7 (stipulation for removal).

[11] ECF No. 16.

[12] ECF Nos. 19-11 (2015 PSI); 19-12 (third guilty plea agreement).

[13] ECF No. 19-11.

Zolano-Rojas stated that his stepfather had raped and tortured him as a child and that he attempted suicide at age 11 and has been "forced by the Mexican Mafia to sell drugs, since 2007."[14]  He also reported that he has untreated "cancer on his rib," graduated from high school in Mexico, has been unemployed since 2007, and is single with no children.[15]

Zolano-Rojas was serving his sentence on this conviction when immigration officials served him with a notice of intent to issue a final administrative removal order in November 2016.[16]  The administrative removal order deems him removable based on his April 2007 conviction, which constitutes an aggravated felony under the Immigration and Nationality Act.[17] He was removed on September 4, 2018,[18] and reentered October 9, 2018.[19]  So the Department of Homeland Security (DHS) reinstated his prior removal order and removed him the same day.[20]  His last reentry was sometime before June 26, 2019, when he was arrested for drug trafficking again.[21]  He was released to DHS custody that day and indicted on December 28, 2019, for unlawful reentry under 18 U.S.C. § 1326(a) and (b).[22]

---

[14] *Id.*

[15] *Id.*

[16] ECF No. 19-10 (notice of intent to issue final administrative removal); ECF No. 19-12.

[17] *See* ECF No. 19-10 at 4; *see also* 8 U.S.C. § 1101(a)(43)(B).

[18] ECF No. 19-13 (verification of removal).

[19] ECF No. 19-14 (reinstatement of prior removal order).

[20] *Id.*

[21] ECF No. 1 (indictment).

[22] *Id.*

**Discussion**

Zolano-Rojas moves to dismiss the indictment in a collateral attack of the underlying removal orders from June 2009 and September 2016.[23]  Under § 1326(d), a defendant may challenge an underlying removal order by showing that (1) he exhausted the administrative remedies available to him appeal the order, (2) the underlying deportation proceedings where the removal order was issued deprived him of the opportunity for judicial review, and (3) the entry of the removal order was fundamentally unfair.  Because the government does not contest that Zolano-Rojas meets the first and second elements,[24] I focus only on whether the entry of each removal order was unfair.

Zolano-Rojas objects to the magistrate judge's conclusion that the removal orders are valid because he failed to make a "plausible showing" that an immigration judge (IJ) would have granted him discretionary relief; pre-conclusion voluntary departure, relief under the Convention Against Torture, or withholding of removal.[25]  The government responds that Zolano-Rojas has failed to meet his burden on each ground.[26]

A district judge must review de novo the portions of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made" on a dispositive motion like this one.[27]  "The district judge may affirm, reverse, or modify in whole or in part, the magistrate judge's order" or "remand the matter to the magistrate judge with instructions."[28]

---

[23] ECF No. 16.

[24] ECF Nos. 31 at 3 n.10; 19 at 6 n.4.

[25] ECF No. 27 at 5 (quoting *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263–64 (9th Cir. 2013) (internal quotation omitted)); *see also* ECF No. 30 at 4.

[26] ECF Nos. 19, 31.

[27] *See* 28 U.S.C. § 636(b)(1); LR IB 1-4; LR IB 3-2(b).

[28] LR IB 3-2(b).

4

1  Because Zolano-Rojas abandons his argument that he was eligible for withholding of removal, I

2  focus only on whether he made the requisite showing that he was prejudice by being denied

3  voluntary departure and relief under the Convention Against Torture (CAT relief).

4  **I.  Zolano-Rojas fails to show that pre-conclusion voluntary departure was plausible.**

5  A removal order is "fundamentally unfair" under 8 U.S.C. § 1326(d)(3) if the defendant

6  showed that "he suffered prejudice as a result of the defects in the removal proceedings."[29]  A

7  defendant is prejudiced "only if it is plausible that the IJ would have granted voluntary departure

8  relief."[30]  This means that the defendant must first show that he wasn't disqualified for voluntary

9  departure.[31]  Under 8 U.S.C. § 1229c(a), voluntary departure is not available for a person who

10 has been convicted of an aggravated felony.[32]

11 The parties dispute whether Zolano-Rojas's felony drug convictions under NRS 453.337

12 disqualified him from voluntary-departure relief.  The Ninth Circuit certified to the Nevada

13 Supreme Court the question of whether a conviction under NRS 453.337 constitutes an

14 aggravated felony, but the Nevada Supreme Court has yet to answer.[33]  I need not answer this

15 question now, however, because even if Zolano-Rojas's conviction under NRS 453.337 doesn't

16 constitute an aggravated felony, he would still have to show that he was prejudiced.[34]  As I

17 explain below, he cannot make that showing.

18

19 [29] *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015) (internal quotation marks omitted).

20 [30] *Id.*; *United States v. Melendez-Castro*, 671 F.3d 950, 955 (9th Cir. 2012) (internal quotation omitted).

21 [31] *Melendez-Castro*, 671 F.3d at 955.

22 [32] *See* 8 U.S.C. §§ 1229c(a), 1227(a)(2)(A)(iii).

[33] *See United States v. Figueroa-Beltran*, 892 F.3d 997, 1004 (9th Cir. 2018).

23 [34] *Valdez-Novoa*, 780 F.3d at 914.  For the same reasons, I need not reach the merits of the 2018 removal.

"[A] defendant is prejudiced under § 1326(d)(3) when he shows that it is plausible, rather than merely conceivable or possible, that an IJ would have granted the relief for which he was apparently eligible."[35]  This requires the defendant to show that he is eligible for voluntary departure and that the balance of the following positive and negative equities tipped in his favor[36]: "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident."[37]  These equities create a "continuum between those who have no criminal record at all and significant positive ties to the United States, and those who have serious records and no countervailing equities."[38]  "For individuals between these extremes, the question of plausibility requires a closer examination of the facts and a comparison with similar cases."[39]

The negative equities in this case aren't outweighed by any positive ones.  The record shows that, at the time of the stipulated removal order in June 2009, Zolano-Rojas had served a prison sentence for two felony drug convictions, the second of which he committed while on probation for the first.[40]  As the magistrate judge noted, "[t]he two convictions occurred within a ten-month period," demonstrating the defendant's commitment to drug trafficking.[41]  The only

---

[35] *Id.*

[36] *Melendez-Castro*, 671 F.3d at 955.

[37] *Rojas v. Holder*, 704 F.3d 792, 794 (9th Cir. 2012) (emphasis omitted).

[38] *United States v. Alcazar-Bustos*, 382 F. App'x 568, 570 (9th Cir. 2010).

[39] *Id.*

[40] *See* ECF Nos. 19-2; 19-13; 19-4; 19-5; 19-6.

[41] ECF no. 27 at 6.  The magistrate judge relied on Zolano-Rojas's contradictory statements in the stipulation for removal that he did not wish to apply for departure relief as further support, but because of the due-process issues associated with the waiver, which the parties do not contest, I do not rely on the waiver.  *See* ECF No. 27 at 6.

time he was in the country and outside of confinement before his removal in 2009 was between his release for the April 2006 conviction and before his arrest for the second in February 2007.[42]

Further, the presentence investigation reports for those two convictions omit any social history for Zolano-Rojas (he failed to appear for the first and was released to the Nevada Department of Corrections' custody before the Division could complete the second).[43]  While he argues that he had a U.S. citizen daughter residing in California at the time of the 2009 stipulated removal,[44] nothing in the record supports this assertion.  The 2015 presentence investigation report shows that he reported no children in 2015.[45]  And even if the IJ would have been privy to the social history in the 2015 report, it would not have made a difference because it shows that he had been unemployed since 2007, had no education in the United States, no military service, or any other ties to this country.[46]

Zolano-Rojas attempts to quell the sting of his two drug-related convictions by relying on two cases in which the defendants had serious, violent criminal histories.  In *United States v. Valdez-Novoa*, the Ninth Circuit explained that voluntary departure was implausible for a defendant whose negative equities—a "recent and serious" criminal history that included two felonies involving great bodily injury to others, two DUIS, and another misdemeanor— outweighed his strong family and communities ties.[47]  And in *In re Gonzalez-Figueroa*, the Bureau of Immigration Appeals held that the IJ didn't abuse his discretion in granting voluntary

---

[42] *Id.*; ECF Nos. 19-4; 19-6.

[43] ECF No. 19-2; 19-4.

[44] ECF No. 16 at 14.

[45] ECF No. 19-11 at 3.

[46] *Id.*

[47] *Valdez-Novoa*, 780 F.3d at 917–18, 921.

7

departure to a defendant whose four assault convictions were offset by his 15 years in the United States; several citizen or lawful-permanent resident family members, some of whom depended on him financially; and his efforts to rehabilitate his alcoholism.[48]

Zolano-Rojas fails to acknowledge that, despite divergent holdings, both cases lent themselves to the positive-negative-equity analysis while his circumstances do not. In both of those cases, the defendants showed strong ties to their communities—citizen, dependent family members in the United States; education; employment; and lengthy stays. Zolano-Rojas has none. Moreover, the trend in cases with defendants who have less severe criminal histories like his requires *some* positive equities to support a voluntary-departure request.[49] He fails to cite a single case where the defendant's criminal record, standing alone, qualifies the defendant for voluntary departure. Because Zolano-Rojas fails to show that it was plausible that an IJ would have granted him voluntary departure, he can't show that he was prejudiced by the removal or that the removal order was "fundamentally unfair" under § 1326(d)(3).

**II.     The record doesn't support Zolano-Rojas's claim for CAT relief.**

The magistrate judge held that Zolano-Rojas had not shown that CAT relief was plausible because his allegations of child abuse and forced drug trafficking failed to show a likelihood of

---

[48] *In re Gonzales–Figueroa*, 2006 WL 729784 (BIA Feb. 10, 2006).

[49] *Rojas-Pedroza*, 716 F.3d at 1265 (rejecting relief because "[t]he record showed no positive equities, other than Rojas's intermittent stays in the United States. By contrast, the record showed numerous negative equities, including his illegal entries and [four misdemeanor] convictions."); *Melendez-Castro*, 671 F.3d at 955 ("Although he had a criminal record starting with his petty theft of boxer shorts, he also had positive equities that could have been considered in deciding whether to grant him this relief, including his family ties and history of living and working in the United States."); *Alcazar-Bustos*, 382 F. App'x at 569–71 (9th Cir. 2010) (holding that voluntary-departure relief was plausible for a defendant who had a "near-lifetime residence in this country and his family members' citizenship," despite "his [juvenile adjudications and two firearm] convictions, associations with gang members, prior drug use, and sporadic work history.").

future torture upon return to Mexico.[50]  Zolano-Rojas objects to this conclusion, arguing that his allegations about child abuse and the Mexican Mafia would've prompted an IJ to further inquire about the underlying facts for this claim.[51]  The government responds that the child abuse and cartel allegations would not have impacted the IJ's decision because they did not exist in the record in 2009—they first appeared in the 2015 presentence investigation report.[52]

A defendant seeking CAT relief has the burden of "establish[ing] that it is more likely than not that he would be tortured if removed" to his country of citizenship and that this torture would be carried out with the "awareness and willful blindness" of government officials.[53] "Torture" means an "act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" to obtain "information or a confession," punish, intimidate, or coerce, or discriminate.[54]  The defendant must also show that he suffered prolonged mental pain or suffering from the torture or the threat of torture against himself or another.[55]

The Ninth Circuit has acknowledged the corruption of public "'officials in Mexico, particularly at the state and local levels of government, with police officers and prison guards frequently working directly on behalf of drug cartels.'"[56]  But even if the facts in the 2015 presentence investigation report had been made available to the IJ in 2009, Zolano-Rojas failed

---

[50] ECF No. 27 at 12.

[51] ECF No. 30 at 7–8.

[52] ECF No. 31 at 6–8, ECF No. 17 (sealed).

[53] *Zheng v. Ashcroft*, 332 F.3d 1186, 1194, 1197 (9th Cir. 2003) (internal quotation marks and alterations omitted).

[54] 8 C.F.R. § 1208.18(a)(2).

[55] *Id*. at § 1208.18(a)(4).

[56] *Cordoba v. Holder*, 726 F.3d 1106, 1117 (9th Cir. 2013) (quoting *Madrigal v. Holder*, 716 F.3d 499, 510 (9th Cir. 2013) (alterations omitted)).

to provide any evidence that the Mexican Mafia or his step-father continued looking for him or made threats against his family to support his assertion of future torture.[57]  Being "forced to sell drugs" does not meet the definition of torture.  And there is no evidence that he experienced prolonged mental suffering after his childhood suicide attempt.  "Speculation on what could occur is not enough to establish a reasonable fear."[58]  On this record, as it existed in 2009, Zolano-Rojas hasn't shown that he is more likely than not to be tortured upon his return to Mexico, so his claim for CAT relief fails.

### Conclusion

IT IS THEREFORE ORDERED that the magistrate judge's report and recommendation **[ECF No. 27] is ADOPTED** in full.

IT IS FURTHER ORDERED that the motion to dismiss the government's indictment **[ECF No. 16] is DENIED.**

Dated: June 1, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[57] *Nuru v. Gonzales*, 404 F.3d 1207, 1219–20 (9th Cir. 2005) (providing that the defendants established credible fear of future torture where the government continued looking him and "engaged in reprisals against his family.").

[58] *Bartolome v. Sessions*, 904 F.3d 803, 814 (9th Cir. 2018).